IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 96-06038 |
| | : | |
| EMPRESAS INABON, INC., | : | CHAPTER 7 |
| | : | |
| Debtor | : | |
| | : | |
| WIGBERTO LUGO MENDER, Trustee, | : | ADV. NO. 06-0124 |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| CENTRO DE RECAUDACION DE | : | |
| INGRESOS MUNICIPALES; HON. | : | |
| NORMAN E. FOY SANTIAGO, Executive | : | |
| Director of Centro de Recaudacion de | : | |
| Ingresos Municipales, | : | |
| | : | |
| Defendant | : | |

**OPINION AND ORDER**

Before the court are cross-motions for summary judgment filed by the trustee on November 22, 2006 (dkt. #16) and by the Municipal Revenue Collection Center ("CRIM") on January 2, 2007 (dkt. #17), as well as each party's opposition. For the reasons set forth below, the Trustee's motion is granted and CRIM's motion is denied.

Uncontested Material Facts

1. Debtor, Empresas Inabon, Inc. ("Inabon") filed a petition for reorganization under chapter 11 of the Bankruptcy Code on August 6, 1996.

2. The Chapter 11 Plan dated November 15, 1999, as supplemented on May 10, 2000, was confirmed on September 8, 2000. The plan contemplates the sale of real estate

1

belonging to the debtor and its principals.

3. The case was converted to chapter 7 on August 31, 2005, and plaintiff herein was appointed the chapter 7 trustee.

4. The assets of the estate included a real property located at Barrio Coto Laurel in Ponce, Puerto Rico.

5. The property is described in the Property Registry as follows:

*FINCA* #38322, inscrita al folio 196 del tomo 1336 de Ponce I, inscripción 1ra. (Sección I de Ponce).

*DESCRIPCION*: Tomada de la inscripción 1ra.

*RUSTICA: PARCELA #L-29: Parcela de terreno radicada en el Barrio Coto Laurel del Término Municipal de Ponce, Puerto Rico, con una cabida de 5.39 cuerdas, equivalentes a 2 hectáreas, 11 áreas y 84.82 centiáreas, colinda por el: NORTE con camino vecinal.  SUROESTE con la Parcela #28.  OESTE con camino de finca de la Sucesión J. Serrallés.  ESTE con la Parcela #30.*

*En esta parcela queda incluida un area que se dedica a caminos que sirven a otras parcelas.*

*ORIGEN: Se segrega de la finca #14893, inscrita al folio 76 del tomo 438 de Ponce.*

6. As per CRIM's property registry, the subject property has been assigned property identification number 0366-000-007-19-000 under account number 01529344.

7. As per CRIM's property registry, the account appears under the name Inabón Aggregates, Inc., but pertains to the estate herein and was sold on June 5, 2006.

8. According to CRIM's property registry, the property owes $6,866.33 in real property taxes, including $3,803.09 in principal, $2,683.01 in interest and $380.23 in

2

AO 72
(Rev. 8/82)

surcharges, for the years 1990 to 2006, as of June 1, 2006.

9. As per CRIM's property registry, the permanent structures on the land described above have been assigned property identification number 366-000-007-19-001 under account number 01529345.

10. As per CRIM's property registry, the account under the name Casa Duramax Inc. c/o Empresas Inabón, but pertains to the estate herein and was sold on June 5, 2006.

11. According to CRIM's property registry, these permanent structures owe $37,326.24 in real property taxes, including $21,844.94 in principal, $13,296.92 in interest and $2,184.38 in surcharges, for the years 1988 to 2006, as of June 1, 2006.

12. CRIM's secured debt is a statutory "implied" lien (*"hipoteca legal tacita"*) and should be paid to the extent it is secured with the proceeds arising from the sale of the property.

13. The only matter in controversy is the amount in each debt certificate entitled to secured status.

### Procedural Background

On June 6, 2006, plaintiff commenced this adversary proceeding by filing a complaint against CRIM pursuant to Fed. R. Bankr. P. 7001(2), (7) and (9) to determine the validity, priority and extent of CRIM's secured claim, and also sought injunctive relief and declaratory judgment regarding the amount claimed for real property taxes. Plaintiff seeks that the court fix the amount of CRIM's secured claim in the amount of $12,173.72 in principal and $3,555.80 in accrued interest, for a total of $15,729.52[1],

---

[1]Said amount pertains to the amounts owed for tax years 2001 - 2006.

AO 72
(Rev. 8/82)

pursuant to 30 L.P.R.A. § 2651, 31 L.P.R.A. § 5193 and 13 L.P.R.A. § 361, and that the excess amount of CRIM's claim be deemed unsecured pursuant to 11 U.S.C. § 726.

The trustee's position is that the amount entitled to security is limited to the annual tax installments corresponding to the last five years preceding their payment, plus the current year, and any amounts due in excess should be considered claims due personally by the debtor and do not constitute a lien over the property.

CRIM's position is that since it was stayed from collecting on its lien due to the automatic stay, 11 U.S.C. § 362, its lien was preserved by the concept of equitable tolling under 11 U.S.C. § 108(c) and, therefore, the secured status of their claim should be determined as of the date of the filing of the petition and the entire claim should be deemed secured. According to CRIM, its claim cannot become unsecured by the lapse of time when it is barred from collecting its claim by the automatic stay.[2] The CRIM alleges that the automatic stay continued uninterruptedly since the filing of the chapter 11 petition, and throughout conversion to chapter 7.

A pre-trial hearing was held on October 30, 2006, at which time the parties agreed the facts were not at issue and the only matter in controversy is the amount of each debt certificate entitled to secured status.

---

[2]Originally, CRIM also argued that the full amount of their claim should have secured status because the "Tax Debts Sale Act", 21 L.P.R.A. §§ 5921 - 5944, so provides for the years 1990-2006; they subsequently withdrew that portion of their pleadings. See dkt. #20 at p. 2, par. 6.

4

Discussion

*Summary Judgment Standard*

Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Bankr. P. 7056; *see also*, In re Colarusso, 382 F.3d 51 (1st Cir. 2004), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"The summary-judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine issue as to any material fact or in which only a question of law is involved." 10A Wright and Miller, Federal Practice and Procedure § 2712 (3d ed. 1998). "Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried." Id. Summary judgment is not a substitute for a trial of disputed facts; the court may only determine whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain. Id.

*Liens on Property of the Estate*

A chapter 7 trustee may sell any property of the estate, free and clear of liens, after notice and hearing, if the property is to be sold for a price greater than the aggregate value of all liens on the property. 11 U.S.C. § 363(f). Under the Code, the term "statutory lien"

5

AO 72
(Rev. 8/82)

means a "lien arising solely by force of a statute on specified circumstances or conditions, or a lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent upon a statute, and whether or not such interest or lien is made fully effective by statute. 11 U.S.C. § 101(53).

A statutory lien that was valid under applicable state law remains valid through the bankruptcy unless invalidated by some provision of the Bankruptcy Code. In re Bisch, 159 B.R. 546, 550 (9th Cir. BAP 1993), citing Dewsnup v. Timm, 502 U.S. 410, 112 S. Ct. 773, 775, 116 L.Ed.2d 903 (1992) ("A lien passes through bankruptcy unaffected"). Accordingly, one must look to state law to establish the extent, validity and amount to be paid for a secured claim encumbering real property of the estate and arising from a statutory lien.

*Tax Liens under Puerto Rico Law*

The Puerto Rico Mortgage Law establishes that a statutory lien for property taxes due to the "Estado Libre Asociado de Puerto Rico", or its municipalities, or CRIM as its collection agency, arises for the amount of the taxes of the five annual assessments and the current unpaid period.  Specifically,

> A statutory mortgage is constituted in favor of the
> Commonwealth of Puerto Rico, the Center for Collection
> of Municipal Incomes of the Commonwealth of Puerto
> Rico, and its corresponding municipalities on the taxpayers'
> property for land taxes pertaining to the last five annual
> assessments and for current unpaid taxes encumbering it.
> This statutory mortgage is implicit and specifies a
> preference in favor of its titleholders above all other
> creditors and over the third acquirer, even though he may

6

AO 72
(Rev. 8/82)

have recorded his rights.

30 L.P.R.A. § 2651 (1979)[3]. The Puerto Rico Civil Code establishes the preference to be allowed to said statutory lien:

> With respect to certain real property and rights on the realty of the debtor, the following shall have preference:
>
> (1) Credits in favor of the Commonwealth of Puerto Rico, the Municipal Revenue Collection Center, or the corresponding municipality on the taxpayer's assets for the amount of the last five (5) annual assessments and the current unpaid taxes encumbering them.

31 L.P.R.A. § 5193(1) (1930). See also, 13 L.P.R.A. § 361 ("With the exception of the taxes on the encumbered property for five years and for the current year, mortgage credits and crop loans are hereby declared to be liens, having preference over any other charge or lien for taxes or for any other cause.")

The law grants secured status to the amounts corresponding to principal and interest owed for property taxes accrued for the period of five years preceding its payment, plus any amount due for the current year. In The Chase Manhattan Bank v. Corporacion Hotelera de Puerto Rico, 446 F.S. 1052 (D.P.R. 1978), the district court addressed the extent to which a purchaser of property at judicial sale was liable for property taxes due and owing. It stated:

> The law of Puerto Rico thus establishes a preferred legal mortgage existing in favor of the Commonwealth. However, the plain language of the statute sets forth a *floating* time limit within which the preferred lien can be invoked, and there is nothing in this case suggesting that

---

[3]Although both the trustee and CRIM cite to 30 L.P.R.A. § 292, said provision was repealed by Act of Aug. 8, 2979, No. 198, p. 585, S 254.

7

> said statutory time limit can be obviated.

Id. at 1055 (emphasis added)[4]. Further,

> It is clear to us that when San Jeronimo Hotel Corporation purchased the property in 1972, it was only subject to the lien imposed by statute, to wit, to the current annual assessment at the time of the acquisition and to not more than the three[5] annual assessments next preceding the same, provided said taxes had not been paid by Corporacion Hotelera.

Id., citing Martinez v. Sancho, 53 D.P.R. 553, 53 P.R.R. 527 (1938), appeal dismissed, 108 F.2d 960 (1st Cir. 1940); Banco Popular v. Ramirez, 57 D.P.R. 618, 57 P.R.R. 605 (1940). The court concluded that when the property was purchased it was only subject to the lien imposed by statute; that is, the current annual assessment at the time of acquisition and not more than the three annual assessments preceding the same, and that any other taxes due were the personal obligation of the former property owner. Id.

The trustee and the CRIM agree that state law establishes a statutory lien in favor of CRIM for real property taxes for the last five annual assessments and the current year. The trustee proposes to pay accordingly. It is not clearly explained by CRIM how the equitable tolling provisions in section 108(c) will extend for a larger period the amounts allowed by state law.

*The Equitable Tolling Provisions of 11 U.S.C. § 108*

Section 108(c) extends the time period for commencing or continuing civil actions

---

[4]The court cited 30 L.P.R.A. § 292(5), the predecessor to 30 L.P.R.A. § 2651.

[5]Act No. 125 of July 23, 1974 augmented the three year term to five years. The amendment was also made extensive to 13 L.P.R.A. §§ 462, 302 P.R.A. 292(5), 342, and 31 L.P.R.A. §§ 5193(1), 5194(1).

AO 72
(Rev. 8/82)

that are stayed by sections 362, 922, 1201 or 1301 of the Code. "It provides that if an action on a claim against the debtor in a court other than a bankruptcy court is stayed due to the bankruptcy case, any time deadline for commencing and continuing the action is extended to 30 days after notice of termination of the stay, if the deadline would have occurred on an earlier date." 2 Lawrence P. King, et al., Collier on Bankruptcy ¶ 108.04 (15th ed. rev'd 2007). "It applies only to civil actions in courts on claims against the debtor"; "[c]ourts have generally held that it does apply to time periods within which a creditor must bring an action to enforce a lien before the lien expires." Id. at 108-14.

In Gurney v. State of Arizona Department of Revenue, 192 B.R. 529, 539 (9th Cir. BAP 1996), the court concluded that pursuant to sections 108(c) and 105(a) the equitable tolling doctrine may be applied when efforts to collect delinquent taxes were blocked by the automatic stay. The court stated that there is "a legitimate interest in preventing statutes from becoming a shield for serious inequity." Id. at 536. The tolling period "prevents the debtor from filing bankruptcy and the waiting until the statute of limitations has run on the creditor's claim." 1 Norton Bankruptcy Law and Practice 2d, § 16:4, pg. 16-6.[6]

The tolling principles set forth in § 108(c) apply to tax cases. However, the court agrees with the trustee that CRIM's right to secured status for its claim is established by

---

[6] The CRIM cites to Simon v. Navon, 71 F. 3d 9 (1st Cir. 1996), for the proposition that section 108(c) applies to this case. However, the case is inapposite as it concerns a jury finding defendants liable for defamation. The court assumes that the Simon v. Navon case meant to be cited is the one in 116 F.3d 1 (1st Cir. 1997). In the latter case the first circuit found that the suspension period in section 108(c) may result from either state or federal law. The court also stated that the mere existence of the automatic stay does not trigger the suspension period in section 108(c).

9

Puerto Rico law, and granting its request for tolling will constitute an unwarranted extension of the statutory lien in detriment of the bankruptcy estate and in contravention of the principles set forth in 30 L.P.R.A. § 292(5) and 31 L.P.R.A. § 5193(1). CRIM should not receive more in bankruptcy than it would receive outside of bankruptcy.

The court declines CRIM's proposition to find "as an additional uncontested material fact that the automatic stay under 11 U.S.C. § 362(a) has been continuously in operation since the inception of this case, as it regards CRIM's pre-petition secured claim, first under chapter 11 of the Bankruptcy Code, and thereafter under chapter 7." First, the proposition is a legal conclusion. Second, the court disagrees with the legal conclusion. Section 362(c)(2)(C) states that the automatic stay continues until a discharge is granted or denied. Section 1141(d)(1) provides for the discharge of debts upon confirmation of the chapter 11 plan. Thus, the confirmation of the plan in September 2000 discharged the debtor of dischargeable debts, thereby lifting the automatic stay. It was not until August 2005 that the case was converted to chapter 7.

## Conclusion

The court agrees with the trustee that under the provisions of Puerto Rico law cited herein, CRIM's lien over the debtor's properties is for the amounts due for the tax year 2006 and the five years preceding. The secured amount of CRIM's claim is fixed at $12,173.72 for principal and $3,555.80 for interest, for a total of $15,729.52; the balance is allowed as unsecured. CRIM is ordered to modify their property registry to reflect the amounts allowed as secured and unsecured and, upon payment of the secured amount, any and all amounts due in excess of that amount be deleted from property records number

10

AO 72
(Rev. 8/82)

366-000-007-19-000 and 366-000-007-19-001.  The trustee's motion for summary judgment is granted, and CRIM's motion for summary judgment is denied.

The Clerk shall enter judgment accordingly and close this adversary proceeding.

SO ORDERED.

In San Juan, Puerto Rico, this 9th day of July, 2007.

_____
ENRIQUE S. LAMOUTTE
U.S. Bankruptcy Court

AO 72
(Rev. 8/82)